IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Nalvinal Cocroft,                          :
                    Plaintiff              :        Civil Action 2:13-cv-00729

        v.                                 :        Judge Graham

Carolyn W. Colvin,                         :        Magistrate Judge Abel
Acting Commissioner of Social Security,
                    Defendant              :

**REPORT AND RECOMMENDATION**

Plaintiff Nalvinal Cocroft brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

her application for  Supplemental Security Income benefits.  This matter is before the

Magistrate Judge for a report and recommendation on the parties' cross-motions for

summary judgment.

    **Summary of Issues.**  Plaintiff, proceeding *pro se*, argues that the decision of the

Commissioner denying benefits should be reversed because she is tired of being

characterized as a liar. She knows how she feels and has to live with her body everyday.

She cannot go skating anymore because of shortness of breath. Her heart prevents her

from engaging in many activities, including housework and going places. She has a fast

heartbeat every day. She is taking medications for anxiety and depression, and her

moods swing up and down. She feels nervous, lightheaded, and restless. She has

trouble sleeping. She tried to find another lawyer, but she was unsuccessful. She also

takes medication for her heart condition.

**Procedural History.** Plaintiff Nalvinal Cocroft filed her application for disability insurance benefits on November 3, 2009, alleging that she became disabled on February 1, 2009, at age 50, by depression. (R. 171, 190.) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On December 1, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 35.) A vocational expert also testified. On January 24, 2012, the administrative law judge issued a decision finding that Cocroft was not disabled within the meaning of the Act. (R. 25.) On May 23, 2013, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 1-3.)

**Age, Education, and Work Experience.** Nalvinal Cocroft was born May 24, 1959. (R. 171.) She completed the eleventh grade. (R. 193.) She has worked as a custodian. She has only worked for short periods of time. (R. 194.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized Cocroft's testimony as follows:

> During the hearing, the claimant stated that she is limited in her ability to work because of her anxiety and right knee pain. As stated above, the undersigned has determined that the claimant has the following severe impairments: right knee degenerative joint disease with Baker's cysts, depressive disorder, and anxiety disorder. The claimant asserted that she has right knee problems, but she does not use an ambulatory device. Instead, she uses a brace/Ace bandage around her knee for the last three years. She stated that when her knee goes out, which is once or twice per

month in the winter, she uses a cane. The claimant testified that when her knee is not flaring up, she can walk.

Moreover, the claimant asserted that she cannot work due to her anxiety and memory problems. She stated that focusing is a big problem, along with being on time and remembering to go places. She testified that she becomes frustrated due to her memory problems and her difficulty reading. Furthermore, the claimant alleged that when she becomes anxious, her heart races fast and she becomes short of breath and lightheaded. At that point, she must sit or lie in one spot for one to two hours. She testified that this happens every day and is triggered when she is in a closed-in space for too long. Despite her anxiety, the claimant admitted that she does not have problems getting along with supervisors or coworkers. Additionally, the claimant asserted that she has problems sleeping. She also alleged that she has side effects from her medications, including memory loss and lightheadedness.

In terms of her functional limitations, the claimant testified that she avoids climbing stairs due to her knee pain. She stated that she cannot sit for more than one hour due to her knee problems. After one hour, she must stand and stretch for less than one hour. Moreover, the claimant alleged that she cannot stand for more than one hour in an eight-hour day and she cannot sit for even four hours in an eight-hour workday.

Regarding her activities of daily living, the claimant admitted that she lives with her son in an apartment. She stated that she fixes breakfast and other simple meals. She goes grocery shopping with her daughter, but if her knee is bothering her, she will use a motorized cart in the store. Since she does not drive, she takes public transportation or has a family member give her a ride. The claimant also admitted that she does laundry, spends time with her sisters, bathes, watches television, and goes outside a couple time a week.

(R. 19-20.)

   **Medical Evidence of Record.**  The administrative law judge's decision fairly sets

out the relevant medical evidence of record.  This Report and Recommendation will

only briefly summarize that evidence.

3

**Physical Impairments.**

Ralph Newman, D.O. Dr. Newman noted plaintiff's complaints of midline and lateral right knee pain. (R. 490.) On October 22, 2010, plaintiff's physical examination was unremarkable.

On June 24, 2009, plaintiff was treated at the emergency room for anxiety and a cough. Plaintiff reported a long history anxiety causing her to experience racing heart, shortness of breath, lightheadedness, and heaviness in her chest. She was diagnosed with a viral code and chronic anxiety. (R. 467-68.)

Venkatarama R. Gaddam, M.D., F.A.C.C. On July 24, 2009, Dr. Gaddam, a cardiologist, evaluated plaintiff for complaints of chest discomfort and palpitations. Dr. Gaddam opined that sinus tachycardia was the result of anxiety, but could not rule out SVT. Dr. Gaddam recommended that plaintiff wear a Holter monitor and undergo a treadmill Cardiolite stress test to evaluate her ischemic heart disease. (R. 325.) A July 24, 2009 echocardiogram revealed normal left ventricular systolic and diastolic function. Trace mitral regurgitation and pulmonic regurgitation were noted. (R. 324.) An August 14, 2009 treadmill myoview perfusion spect scan found normal stress myocardial perfusion scan and normal left ventricular systolic function. There was no evidence of ischemia noted. (R. 540.)

On September 25, 2009, Dr. Gaddam indicated that the Holter monitor study revealed evidence of isolated ventricular ectopy with one run of three beats of wide

complex tachycardia. Dr. Gaddam stated that it was possible that plaintiff could have symptomatic PVCs. Dr. Gaddam prescribed Verapamil. (R. 327.)

On October 30, 2009, plaintiff reported that she had stopped taking the Verapamil and continued to notice recurrent chest pains. She was urged to begin taking Verapamil again.

In a December 9, 2009 letter to the Social Security Administration, Dr. Gaddam reported that plaintiff had stopped taking Verapamil again. She was prescribed Toprol XL 50 mg daily and aspirin. Other than PVCs and sinus tachycardia, plaintiff had no other evidence of heart disease. Dr. Gaddam opined that PVCs and tachycardia did not render her disabled or functionally limited and that she should be able to lead a completely normal lifestyle. (R. 381.)

On February 26, 2010, plaintiff reported some lightheadedness and worsening palpitations. Dr. Gaddam recommended that plaintiff wear a Holter monitor. (R. 527.) On July 12, 2010, plaintiff reported that she had been doing well. She had no chest pain, pressure, or shortness of breath. Her palpitations had improved. (R. 574.) On February 25, 2011, plaintiff reported that she had been doing well. She had intermittent palpitations, but they were somewhat stable. She reported not taking her medications despite significant symptoms. She had no chest pain, shortness of breath, dizziness or syncope. Dr. Gaddam recommended that plaintiff undergo another Holter study. (R. 575.) On July 18, 2011, plaintiff reported no improvement with her medication. Dr. Gaddam prescribed carvedilot. (R. 580.)

On March 25, 2010, plaintiff underwent a pulmonary function studies. Plaintiff had a normal spirometric examination. (R. 397-407.)

<u>Lynne Torello, M.D.</u> On April 5, 2010, Dr. Torello, a State Agency physician, completed a physical residual functional capacity assessment. Dr. Torello opined that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Plaintiff could stand and/or walk about 6 hours in an 8-hour workday, and she could sit for a total of about 6 hours in an 8-hour workday. Her ability to push and/or pull was unlimited.

Dr. Torello noted that plaintiff alleged anxiety and has been treated for heart palpitations. A July 2009 echocardiogram showed normal left ventricular systolic and diastolic function. An August 2009 treadmill stress test to 7 mets showed normal stress myocardial perfusion scan. There was no evidence of ischemia noted. She had normal left ventricular systolic function.

Plaintiff could occasional climb ramps and stairs, but she could never climb ladders, ropes or scaffolds. She could occasionally balance, stoop, kneel, crouch, or crawl. She should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. Dr. Torello concluded that plaintiff's allegations concerning the intensity of her symptoms and their impact on functioning were not consistent with the totality of the evidence. Plaintiff's statements about her symptoms and their functional effects were only partially credible, and Dr. Torello concluded that plaintiff could perform activities consistent with light work. (R. 424-31.)

On August 24, 2010, Eli Perencevich, D.O. affirmed the April 5, 2010 assessment as written. (R. 579.)

J. Mark Hatheway, M.D. Dr. Hatheway treated plaintiff for early degenerative joint disease and a Baker's cyst in plaintiff's right knee. (R. 472-73.) Plaintiff did not want to pursue surgery at that time. Dr. Hatheway noted that injections in her right knee had provided plaintiff with good relief. (R. 470-71.) On April 30, 2009, plaintiff complained of swelling. On December 1, 2009, plaintiff reported that her knee gave out. Plaintiff complained of pain on July 20, 2010. Plaintiff requested cortisone on November 15, 2010. (R. 469.)

**Psychological Impairments.**

Earl F. Greer, Jr., Ph.D. On December 21, 2009, Dr. Greer, a psychologist, completed a questionnaire at the request of the Bureau of Disability Determination. Dr. Greer began treating plaintiff on October 9, 2009 and last saw her on December 2, 2009. He described plaintiff as anxious, tense, depressed, irritable and oriented. She was easily confused and had poor tolerance for frustration. She had decreased interest, but her self-care was appropriate. She had symptoms daily, with mild to moderate severity. Plaintiff only kept every other appointment. She had poor ability to tolerate stress. Dr. Greer diagnosed dysthymic disorder with anxiety. (R. 386-88.)

Robert Olah, Ph.D. On March 20, 2010, Dr. Olah, a psychologist, completed an evaluation of plaintiff at the request of the Bureau of Disability Determination. Plaintiff

arrived at the appointment on time and unaccompanied. She traveled to the appointment by bus.

Plaintiff was prescribed Wellbutrin and Prozac for depression and Buspirone for anxiety. She found her medications "somewhat" helpful. (R. 391.)

Plaintiff completed the tenth grade. She left school because she was pregnant. She said she did not perform well and she attended special education classes for reading. She last worked as a cleaner at the City Center mall. She held this job for two years; she quit in 2002. She had been fired from jobs twice for leaving early and for not going to work. She had problems with her supervisors because they asked too much of her. At times, she had problems following instructions. Cocroft indicated that if she had a job and she was stressed, she would likely leave. She didn't see herself working at all.

On mental status examination, Cocroft revealed a flat affect and a restricted range of affective expressions. She reported feeling tired a lot. She reported having a slight anxiety attack during the examination. She reported feeling depressed or anxious at times. She recently gained five to ten pounds that she attributed to stress. She was tearful at times. She was depressed almost everyday for most of the day. She denied suicidal or homicidal ideation. She felt hopeless and worthless. She had mood swings. She was often irritable. She enjoyed watching television. She used to like to skate, but halfway around the rink she was short of breath. Daily symptoms of anxiety included shortness of breath, becoming easily tired, a racing heart, and lightheadedness. Plaintiff

was alert and oriented in all four spheres. She was able to maintain concentration and respond appropriately to questions. She had poor short-term memory abilities.

Cocroft lived in an apartment with her grandson. She spent a lot of time with her daughter, who she described as her only social support. Cocroft could cook a little and performed housework. Her reading, writing and spelling skills were poor.

Dr. Olah diagnosed depressive disorder, not otherwise specified and anxiety disorder, not otherwise specified. He assigned a Global Assessment of Functioning ("GAF") score of 60. Dr. Olah noted that in a 2008 psychological evaluation, plaintiff did not identify anxiety as a problem. Dr. Olah opined that plaintiff's abilities to relate to others and to understand, remember and follow instructions was mildly impaired. Plaintiff's abilities to maintain attention, concentration and perform simple, repetitive tasks and to withstand the stress and pressures associated with day-to-day work activity were also mildly impaired. (R. 390-95.)

<u>Karla Voyten, Ph.D.</u> On April 5, 2010, Dr. Voyten, a psychologist, completed a psychiatric review technique. (R. 410-21.) Dr. Voyten opined that plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. (R. 420.)

<u>Karen Terry, Ph.D.</u> On August 19, 2010, Dr. Terry, a State Agency psychologist, completed a mental residual functional capacity assessment Dr. Terry opined that plaintiff was moderately limited in her ability to understand and remember detailed instructions. With respect to sustained concentration and persistence, plaintiff was

moderately limited in her abilities to carry out detailed instructions; to maintain

attention and concentration for extended periods; and to complete a normal workday

and workweek without interruptions from psychologically based symptoms and to

perform at a consistent pace without an unreasonable number and length of rest

periods. With respect to social interaction, plaintiff was moderately limited in her

abilities to interact appropriately with the general public and to accept instructions and

respond appropriately to criticism from supervisors. With respect to adaptation,

plaintiff was moderately limited in his ability to respond appropriately to changes in

the work setting.

Dr. Terry concluded that the Dr. Olah's opinion was entitled to weight, with the

exception of his opinion regarding her ability to relate to others. Dr. Terry noted that

there was evidence suggesting that plaintiff tended to possibly exaggerate

symptomatology or information for secondary gain. Dr. Terry concluded that plaintiff

retained the ability, when self-motivated, to perform simple, routine tasks in a routine,

static and predictable work setting that did not require strict production quotas or fast-

paced performance and required her to only have superficial conduct with others. She

would perform optimally in a setting that did not allow her to work with the general

public. (R. 433-36.)

In a psychiatric review technique, Dr. Terry opined that plaintiff had mild

restriction of activities of daily living, moderate difficulties in maintaining social

functioning, and moderate difficulties in maintaining concentration, persistence or pace.

She had no episodes of decompensation. (R. 447.)

**<u>Administrative Law Judge's Findings.</u>**

1.    The claimant has not engaged in substantial gainful activity since October 6, 2009, the application date (20 CFR 416.971 *et seq*.).

2.    The claimant has the following severe impairments: right knee degenerative joint disease with Baker's cyst, depressive disorder, and anxiety disorder (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she cannot climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs. She can occasionally push, pull, and operate foot pedals with the right lower extremity. Additionally, the claimant must avoid hazards such as working around dangerous moving machinery and working at unprotected heights. Moreover, the claimant is limited to performing simple, routine, no more than Specific Vocational Preparation (SVP) 2-type jobs in an environment without fast-paced production or strict time quotas. She can have superficial contact or interaction with others.

5.    The claimant is capable of performing past relevant work as a cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.    The claimant has not been under a disability, as defined in the Social Security Act, since October 6, 2009, the date the application was filed 920 CFR 416.920(f)).

(R. 14-25.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Here, plaintiff has failed to provide any detailed explanation regarding why she disagrees with the decision of the administrative law judge. Arguments raised in a perfunctory manner are deemed waived.  *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). Pro se litigants are typically held to same standards as represented parties. *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005). However, it appears that plaintiff has asserted two arguments in her

12

statement of errors. She has attached numerous exhibits to her statement of errors, and it appears she may be seeking remand based on new and material evidence.

Second, plaintiff appears to be arguing that the administrative law judge erred in making his credibility determination concerning her allegations of pain. Plaintiff maintains that she is "tired of being made a liar".

**Analysis.** When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner. *Casey v. Secy. of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). This Court reviews the administrative law judge's decision, not that of the Appeals Council denying the request for review. *Id.* Consequently, only evidence of record before the administrative law judge may be considered by the District Court in reviewing the final decision of the Commissioner of Social Security denying benefits. *Cline v. Comm'r. of Social Security*, 96 F.3d 146, 148-49 (6th Cir. 1996). A claimant may seek remand so that the evidence presented to the Appeals Council can be considered by the administrative law judge. *Id.*; *Gartman v. Apfel*, 220 F.3d 918, 922 (8th Cir. 2000).

Section 405(g), sentence six, provides, in relevant part:

> The court may . . . at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

The evidence supporting a motion to remand must be both new and material. *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996). Evidence is "new only if it was 'not in

existence or available to the claimant at the time of the administrative proceeding.' *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001). It is material "only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.' *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 711 (6th Cir. 1988)." *Id.* Good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Secretary of Health & Human Services,* 727 F.2d 551, 554 (1984)(per curiam). *Id.* Merely cumulative evidence does not establish good cause for a remand. *Borman v. Heckler,* 706 F.2d 564, 568 (6th Cir. 1983); *Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir. 1980). The plaintiff has the burden of establishing that the evidence is new and material and that there is good cause for not having presented the evidence to the Administrative Law Judge. *Id.,* citing, *Oliver v. Secretary of Health & Human Services,* 804 F.2d 964, 966 (6th Cir. 1986).

Plaintiff submitted medical records from her July 7, 2013 admission to Netcare's Crisis Stabilization Unit. At admission, plaintiff presented at Netcare voluntarily and reported anxiety symptoms including excessive worrying, tenseness, racing heartbeat, social withdrawal, decreased engagement in once pleasurable activities, depression, and irritability. Plaintiff reported loss of memory, misplacing items at home, and getting lost. She was unable to fall asleep and woke up several times during the night. She denied suicidal or homicidal ideation or hallucinations. Plaintiff reported that it was

difficult for her to determine if her physical symptoms were the result of an underlying cardiac condition or because of mental health issues. Plaintiff agreed to being linked with ongoing care at a community mental health center. During her inpatient stay, plaintiff had a reduction of her depressive symptoms and identified coping skills. She developed an awareness of warning signs and recognized the need to maintain medication.

Plaintiff was discharged on July 9, 2013. On discharge, plaintiff denied suicidal or homicidal ideation and was not exhibiting any symptoms of mania or psychosis. She was linked with a community mental health center for follow up care. She was diagnosed with anxiety disorder, not otherwise specified; depressive disorder, not otherwise specified; major depressive disorder recurrent, unspecified by history. Diagnosis was deferred on Axis II. Plaintiff was assigned a GAF score of 45.

Her mental status examination at discharge revealed a euthymic mood with reactive affect. She was alert and oriented in all four spheres. Plaintiff reported adequate sleep and good appetite. She exhibited adequate attention space with good eye contact. She was appropriate dressed and groomed. She had good judgment and insight and was goal-oriented.

Plaintiff also submitted a December 14, 2010 letter from Dr. Gaddam indicating that plaintiff was experiencing a worsening of her shortness of breath and that he was having an echocardiogram performed that day. Doc. 14 at PageID# 680.

Plaintiff has not demonstrated that the evidence she has submitted is material. To satisfy the materiality requirement, plaintiff must show that there was a reasonable probability that the Commissioner would have reached a different conclusion on the issue of disability had he been presented with the evidence. The evidence shows that plaintiff was voluntarily admitted based on complaints of anxiety and insomnia. She denied suicidal or homicidal ideation. There was no evidence of hallucinations or psychosis. Upon discharge, plaintiff's mood was euthymic. She reported adequate sleep and good appetite. Plaintiff was hopeful, motivated, and goal-oriented. It is unlikely that the administrative law judge would have reached a different conclusion had he been presented with this evidence.

<u>Credibility Determinations: Controlling Law</u>. Pain is an elusive phenomena. Ultimately, no one can say with certainty whether another person's subjectively disabling pain precludes all substantial gainful employment. The Social Security Act requires that the claimant establish that he is disabled. Under the Act, a "disability" is defined as "inability to engage in any substantial gainful activity <u>by reason of any medically determinable or mental impairment</u> which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §423(d)(1)(A) (emphasis added).

Under the provisions of 42 U.S.C. §423(d)(5)(A):

> An individual's statement as to pain or other symptoms shall
> not alone be conclusive evidence of disability as defined in
> this section; there must be medical signs and findings,

established by medically acceptable clinical or laboratory
diagnostic techniques, which show the existence of a medical
impairment that results from anatomical, physiological, or
psychological abnormalities which could reasonably be
expected to produce the pain or other symptoms alleged and
which, when considered with all evidence required to be
furnished under this paragraph (including statements of the
individual or his physician as to the intensity and
persistence of such pain or other symptoms which may
reasonably be accepted as consistent with the medical signs
and findings), would lead to a conclusion that the individual
is under a disability. Objective medical evidence of pain or
other symptoms established by medically acceptable clinical
or other laboratory techniques (for example, deteriorating
nerve or muscle tissue) must be considered in reaching a
conclusion as to whether the individual is under a dis-
ability.

The Commissioner's regulations provide:

(a) *General*. In determining whether you are disabled, we
consider all your symptoms, including pain, and the extent
to which your symptoms can reasonably be accepted as
consistent with the objective medical evidence and other
evidence. By objective medical evidence, we mean medical
signs and laboratory findings as defined in §404.1528(b) and
(c). By other evidence, we mean the kinds of evidence
described in §§404.1512(b)(2) through (6) and 404.1513(b)(1),
(4), and (5) and (e). These include statements or reports
from you, your treating or examining physician or
psychologist, and others about your medical history,
diagnosis, prescribed treatment, daily activities, efforts to
work and any other evidence showing how your
impairment(s) and any related symptoms affect your ability
to work. We will consider all of your statements about your
symptoms, such as pain, and any description you, your
physician, your psychologist, or other persons may provide
about how the symptoms affect your activities of daily living
and your ability to work. However, statements about your
pain or other symptoms will not alone establish that you are
disabled; there must be medical signs and laboratory

findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you. (Section 404.1527 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.) We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

20 C.F.R. §404.1529(a).

In *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986) the Sixth Circuit established the following test for evaluating complaints of disabling pain or other symptoms. First, the Court must determine "whether there is objective medical evidence of an underlying medical condition." If so, the Court must then

examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853. Any "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987).

<u>Credibility Determination: Discussion</u>. With respect to plaintiff's physical impairments, the administrative law judge stated:

> After carful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations and they do not support the existence of limitations greater than those reported in the above residual functional capacity. More specifically, the longitudinal medical evidence cannot be fully reconciled with the level of symptoms and limiting effects of the impairments as alleged. Regarding the claimant's physical impairment, prior to the claimant's alleged onset date, she complained of right knee pain to Ralph Newman, D.O. (Exhibit C-18F, 15). On November 15, 2009, the claimant against complained of right knee pain and Dr. Newman found that she was positive for midline and lateral right knee pain (Exhibit C-18F, 12). J. Mark Hatheway, M.D. diagnosed the claimant with early degenerative joint disease of the right knee with Baker's cyst on December 1, 2009. The claimant declined surgical intervention at that time (Exhibit C-17F, 4).
>
> The claimant subsequently received a knee injection and Dr. Newman found the claimant to be doing better by January 29, 2010 (Exhibit C-18F, 10). The record does not appear to contain any significant complaints of right knee pain again until March 30, 2011. Rather, the claimant reported good relief from a knee injection on July 20, 2010, and Dr. Newman found the claimant to have a normal physical examination on October 22, 2010 (Exhibits C-17F, 3 -18F, 2). Similarly, the claimant did not complain of knee pain to Dr. Newman on December 23, 2010 (Exhibit C-19F, 7). The

claimant did again report knee pain on March 30, 2011, and Dr. Newman noted some tenderness and crepitus (Exhibit C-19F, 4). Yet by March 6, 2011, Dr. Newman found the claimant to have a normal physical examination (Exhibit C-19F, 3).

(R. 19.)

With respect to plaintiff's mental health impairment, the administrative law judge noted:

Dr. Greer stated that the claimant's mental impairments were improving with treatment. However, the claimant was often non-compliant with her counseling appointments and she missed every other appointment. The claimant's non-compliance with these treatment recommendations suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application. Moreover, despite her progress, she only attended treatment with Dr. Greer from October 2009 to December 2009. Since the claimant did not follow up with another psychological or psychiatric specialist, the record suggests that the symptoms may not have been as serious as alleged in connection with this application and appeal.

Additionally, in evaluating the persuasiveness of the claimant's allegations and testimony, the undersigned notes that the scope of the claimant's daily activities weakens the credibility of the allegations. The claimant lives with a family member, shops in a grocery store with her daughter, spends time with her sisters, uses public transportation, and reports no problems getting along with authority figures and coworkers. One would not expect an individual with the claimant's alleged anxiety and panic attacks to be able to perform numerous activities that require high levels of social interaction. Moreover, the claimant alleged that she often forgets appointments and has problems being on time. Yet, Dr. Olah, the consultative examiner, reported that the claimant was on time for her appointment and arrived unaccompanied by public transportation. This suggests greater memory abilities than the claimant alleged in connection with this appeal. Therefore, the credibility of the claimant's allegations has been significantly weakened and the undersigned notes that the claimant is significantly less restricted than she has otherwise indicated.

(R. 21.) The administrative law judge properly considered plaintiff's medical history, diagnoses, prescribed treatment, daily activities to evaluate her ability to work and concluded that plaintiff's allegations were not consistent with the objective medical evidence.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R.  Abel
United States Magistrate Judge